TIMOTHY DESMOND *vs.* ROBERT FAWCETT & another.

Middlesex.    October 18, 1916. — February 28, 1917.

Present: RUGG, C. J., LORING, BRALEY, PIERCE, & CARROLL, JJ.

*Malicious Prosecution,* Probable cause. *Practice, Civil,* Offer of proof. *Evidence,* Offer of proof.

In an action for malicious prosecution in causing the plaintiff to be prosecuted on false charges of larceny made by the defendants on which he was convicted in a district court and on appeal to the Superior Court was acquitted, the case may be taken out of the rule in *Whitney* v. *Peckham,* 15 Mass. 243, by showing either that the plaintiff was convicted in the district court solely upon the false testimony of the defendants or that the defendants procured the plaintiff's wrongful prosecution and conviction in pursuance of a fraudulent conspiracy to prevent him from collecting from them a just debt due to him, and on one of those two things being shown it may be found that the prosecution was without probable cause.

In the same case it was *held* that the judge erred in excluding evidence offered by the plaintiff which tended to prove a fraudulent conspiracy to accuse him falsely in the district court.

In the case stated above the plaintiff made two offers of proof, and this court, in determining the question whether the evidence offered was excluded erroneously, considered the facts stated in both offers of proof and what would have been proved by such evidence combined in one offer of proof. Treating in this way the offers of proof as one, it was *held* that the plaintiff offered to show that the whole scheme of the defendants, including the conviction in the district court, was a fraudulent conspiracy from the beginning.

Collection and discussion by LORING, J., of authorities upon probable cause as a defence to an action for malicious prosecution in cases where the plaintiff was convicted in a lower court and was acquitted on appeal.

TORT in three counts, the first for alleged malicious prosecution, the second for alleged extortion and the malicious institution and prosecution of a civil action and the third for alleged

conspiracy to harass the plaintiff and extort money from him by criminal prosecutions and civil actions. Writ dated November 10, 1911.

In the Superior Court the case was tried before *Hardy,* J. The course of the trial is described in the opinion. The judge ordered a verdict for the defendants on all three counts of the plaintiff's declaration; and the plaintiff alleged exceptions. The plaintiff in his brief expressly waived all exceptions applying to the second and third counts.

. *F. W. Dallinger,* for the plaintiff.

*H. H. Pratt,* for the defendants, submitted a brief.

LORING, J. At the argument the plaintiff waived all exceptions which had to do with the second and third counts. The remaining count was for malicious prosecution. At the trial the judge directed a verdict for the defendants and the case is here on exceptions to that ruling and to the exclusion of evidence offered by the plaintiff.

The facts bearing on these exceptions were in substance these: The defendants Robert and Robert J. Fawcett (father and son and partners in business) had borrowed of the plaintiff several sums of money amounting in the aggregate to $1,000. In June, 1909, the plaintiff was pressing them for payment. At the defendants' request the plaintiff went to their store on the fifth, seventh, eighth and ninth of June of that year. When the plaintiff went to the store on June 9 he found the son. The son soon after left, telling the plaintiff that his father would be in shortly. While the plaintiff was waiting the father rushed in and accused him of taking money from their (the defendants') cash drawer. The son returned soon after and joined in the accusation. The plaintiff denied taking the money. Two days later the defendants wrote the plaintiff that they had come to the conclusion that they needed $1,000, to reimburse them for their loss and that if it was not paid within two days they would proceed. No money being paid to the defendants by the plaintiff, the father made a complaint to the Third District Court of Eastern Middlesex, charging the plaintiff with larceny of money from them; he was tried and found guilty, but on appeal to the Superior Court he was acquitted "prior to the date of the writ in the present action." Thereupon this action for malicious prosecution was brought. At

the trial the plaintiff testified that he did not take any money belonging to the defendants; "that the testimony of the two Fawcetts in the district court as to the alleged larceny was false; that no testimony as to his committing the larceny charged was offered by the prosecution in the district court except that of the two Fawcetts." Beyond this the bill of exceptions does not set forth the testimony on which the plaintiff was convicted in the court below.

In addition to the foregoing the following evidence was introduced by the plaintiff, without objection on the part of the defendants, namely: After the entry of the criminal complaint the defendants (in the present case) brought a civil action against the plaintiff (in the present case) to recover $3,000 which they alleged the plaintiff had stolen from them "during the three years preceding June 9, 1909, and which included the amounts made the basis of the criminal complaint."

The bill of exceptions states that the plaintiff "also offered to prove" that in that civil action both defendants testified "that for about a year and two months prior to June 9, 1909" (the day on which the accusation of larceny was made), they had missed money from their money drawer, "had no suspicion as to the guilty party, and had made no efforts to discover the thief; that for all that period the plaintiff had been in their store practically every day, coming about ten o'clock in the morning and staying till noon or afternoon." The period of "about a year and two months prior to June 9, 1909," begins about April 9, 1908, and ends June 9, 1909. Following the statement of this offer of proof the bill of exceptions states: "The evidence offered was excluded, and the plaintiff duly excepted."

The bill of exceptions then states that the plaintiff also "offered to prove" that for the period beginning April 22, 1908, and ending April 17, 1909, he (the plaintiff) was employed on the bridges between Boston and Cambridge from eight o'clock in the morning until five o'clock in the afternoon and that he did not leave his working place at the dinner hour but ate his dinner there and that during that period he was absent from the bridges "only about fifty working days." The period covered by this offer of proof was a period of about a year lacking five days in length and was part of the year and two months mentioned in the first offer

of proof. The way in which the plaintiff offered to prove these matters was by the testimony of the bridge commissioner of Cambridge and various employees working on the bridges in question and by their time books and records. Following the statement of this offer of proof the bill of exceptions states "the evidence offered was excluded, and the plaintiff duly excepted."

Where a defendant without having probable cause for so doing maliciously makes a complaint (to a court having jurisdiction of the matter) charging the plaintiff with having committed a crime and the plaintiff is acquitted, it is settled that he has an action against the defendant for compensation. Justice in such a case could not do less than that.

On the other hand where a defendant has cause to believe that a crime has been committed by the plaintiff he ought not to be subjected to an action if having probable cause and acting in good faith he makes a complaint to the proper court or magistrate charging the plaintiff with that crime. It is the duty of every member of the community to see to it that crime is punished. Public policy as well as justice requires that in such a case (that is, where there is probable cause and good faith in making the complaint) the complainant should not be harassed.

It is not easy in every case to draw the line between these correlative and to some extent conflicting rights and duties. The case at bar is a case where it becomes necessary to consider in one connection at least where that line should be drawn.

It is settled that a plaintiff cannot maintain an action for malicious prosecution until the criminal proceedings he complains of have ended and unless they have ended in his favor. So far as that requisite is concerned it is settled that where the plaintiff (in the subsequent action) was convicted below but acquitted on appeal the criminal proceedings have ended in his favor.

But it is also settled (in this Commonwealth and generally in other jurisdictions) that a conviction below even though there is an acquittal on appeal (nothing more appearing) is final in favor of the defendant (in the subsequent action) upon the issue of probable cause. The leading cases on that point are *Whitney* v. *Peckham,* 15 Mass. 243, and *Reynolds* v. *Kennedy,* 1 Wils. 232, on the authority of which *Whitney* v. *Peckham* was decided. The general proposition is abundantly established by authority. For

collections of cases on the point generally see *Saunders* v. *Baldwin,* 112 Va. 431, and a note to that case in 34 L. R. A. (N. S.) 958, a note to *Cloon* v. *Gerry* (13 Gray, 201), in 1 Ames Select Cases on Torts, 585; Newell Malicious Prosecution, 284 *et seq.,* 19 Am. & Eng. Encyc. of Law 64, and 26 Cyc. 42, note.

In some jurisdictions (see *Skeffington* v. *Eylward,* 97 Minn. 244; *Nehr* v. *Dobbs,* 47 Neb. 863; *Olson* v. *Neal,*.63 Iowa, 214; and see in that connection *Goodrich* v. *Warner,* 21 Conn. 432; *Richter* v. *Koster,* 45 Ind. 440; *Nicholson* v. *Sternberg,* 61 N. Y. App. Div. 51) the rule has been relaxed and it is held that conviction below followed by acquittal on appeal is only *prima facie* evidence of probable cause on the part of the defendant in the subsequent action. There is an intimation to that effect in *Bacon* v. *Towne,* 4 Cush. 217, 236. But it is contrary to the great weight of authority generally and to the opinions of this court in *Cloon* v. *Gerry,* 13 Gray, 201, and *Dennehey* v. *Woodsum,* 100 Mass. 195, and to the decision in the subsequent case of *Morrow* v. *Wheeler &* *Wilson Manuf. Co.* 165 Mass. 349. The typical case to which the rule of *Whitney* v. *Peckham* applies is where the complaint was submitted to the magistrate on the same evidence on which the defendant acted in making it. In such a case conviction by the magistrate establishes the existence of probable cause on the part of the defendant and is not *prima facie* evidence of it only. If the intimation in *Bacon* v. *Towne* were law in this Commonwealth the order of the presiding judge directing a verdict for the defendant would have been wrong because the presumption is *prima facie* and not final. But we are of opinion that this intimation in *Bacon* v. *Towne* is not law and that the exception to the ruling ought not to be sustained on this ground.

Although in the ordinary case (that is to say where nothing further appears) conviction below followed by acquittal above establishes in favor of the defendant (in the subsequent action) the existence of probable cause, that rule ought not to apply in a case where the conviction below was procured by "fraud, conspiracy or subornation in its procurement," to quote the words of Chief Justice Shaw in *Cloon* v. *Gerry,* 13 Gray, 201, 203. This must be so on principle and as matter of decision this is established by the very great weight of authority.

On principle a defendant when sued for malicious prosecution

ought not to be allowed to invoke for his protection upon the issue of probable cause a conviction by the inferior magistrate when that conviction was procured by "fraud, conspiracy or subornation in its procurement." It is elementary that no defendant can set up in defence his own fraud or anything procured by his own fraud.

*Griffis* v. *Sellars*, 4 Dev. & Bat. 176, is the only case to the contrary, in which an attempt has been made to give a reason for the proposition that, even when procured by his own fraud or through a conspiracy to which he was a party, a conviction of the plaintiff by the inferior magistrate (reversed on appeal) is decisive in favor of the defendant of the issue of probable cause on his part. The reason there given is that when the case was heard by the inferior magistrate the plaintiff (in the subsequent action for malicious prosecution) had his day in court and that he is concluded by the decision then made convicting him of guilt. That is to say that the conviction by the inferior magistrate although reversed on appeal makes the issue so decided *res judicata*. It is only a final judgment which concludes the parties under the doctrine of *res judicata*. A conviction below followed by an acquittal on appeal does not establish the guilt of the person so convicted. So far from that being the fact the contrary is the established law of *res judicata*. A conviction below is wiped out by the acquittal on appeal so far as the doctrine of *res judicata* is concerned. A conviction below followed by acquittal above on which final judgment is entered establishes the innocence not the guilt of the prisoner. Under these circumstances it is not necessary to go farther and point out (in the first place) that the parties to the criminal prosecution and those to the subsequent action for malicious prosecution are not the same and (in the second place) that the issues tried in the criminal complaint and in the civil action for malicious prosecution are quite different. It is plain that the rule of *Whitney* v. *Peckham* is not based on the doctrine of *res judicata*. The only other reason found in *Griffis* v. *Sellars* for the decision there made is that if the conviction below (although reversed on appeal) does not establish probable cause on the part of the defendant in the subsequent action for malicious prosecution the parties could go on forever in bringing actions and cross actions for malicious prosecution. As soon as it is established that *Whitney* v.

*Peckham* does not rest on the doctrine of *res judicata* this further reason falls to the ground. We are of opinion that the reasoning in *Griffis* v. *Sellars* is not sound.

The conclusion thus reached on principle is established by the great weight of authority, although there is some conflict in the decisions on the point. As we have said already, it was decided in *Griffis* ·v. *Sellars*, 4 Dev. & Bat. 176, (and this was followed in *Smith* ·v. *Thomas*, 149 N. C. 100,) that even when procured by fraud conviction below is final upon the issue of probable cause. And *Parker* v. *Huntington*, 7 Gray, 36, has been cited as a decision to that effect. See also in this connection *Clements* v. *Odorless Excavating Apparatus Co.* 67 Md. 461; *S. C.* 67 Md. 605. But the overwhelming weight of authority is to the contrary. *Burt* v. *Place*, 4 Wend. 591, is the first decision upon the point; for subsequent cases in New York see *Palmer* v. *Avery*, 41 Barb. 290, 303; affirmed 41 N. Y. 619; *Mesnier* v. *Benicke*, 82 App. Div. (N. Y.) 404, 407; *Johnson* v. *Girdwood*, 7 Misc. (N. Y.) 651, 654, affirmed 143 N. Y. 660. For decisions to that effect see *Carpenter* v. *Sibley*, 153 Cal. 215; *Boogher* v. *Hough*, 99 Mo. 183. For statements to that effect in cases where the point was not actually decided, see *Cloon* v. *Gerry*, 13 Gray, 201, 202, 203; *Dennehey* ·v. *Woodsum*, 100 Mass. 195, 197; *Crescent City Live Stock Co.* v. *Butchers' Union Slaughter-House Co.* 120 U. S. 141, 151; *Knight* v. *International & Great Northern Railway*, 61 Fed. Rep. 87, 90; *Grohmann* v. *Krischman*, 168 Penn. St. 189, 203; *MacDonald* v. *Schroeder*, 214 Penn. St. 411, 414; *Saunders* v. *Baldwin*, 112 Va. 431, 441; *Womack* v. *Circle*, 32 Gratt. 324, 327; *Payson* v. *Caswell*, 22 Maine, 212, 226; *Phillips* v. *Kalamazoo*, 53 Mich. 33, 34; *Thick* v. *Washer*, 137 Mich. 155, 157; *Welch* v. *Boston & Providence Railroad*, 14 R. I. 609, 610; *Memphis Gayoso Gas Co.* v. *Williamson*, 9 Heisk. 314, 323; *McElroy* v. *Catholic Press Co.* 254 Ill. 290, 298; *Topolewski* v. *Plankinton Packing Co.* 143 Wis. 52, 64; *Root* v. *Rose*, 6 No. Dak. 575, 580; *Holliday* v. *Holliday*, 123 Cal. 26, 32; *Hartshorn* v. *Smith*, 104 Ga. 235, 238; *Casey* v. *Dorr*, 94 Ark. 433, 436; *Spring* v. *Besore*, 12 B. Mon. 551, 556; *Duerr* v. *Kentucky & Indiana Bridge Co.* 132 Ky. 228, 232.

Whether there is a conflict of authority on this point in this Commonwealth depends upon what the decision in *Parker* v. *Huntington*, 7 Gray, 36, ought to be taken to stand for. On one

side we have the statement of Chief Justice Shaw in *Cloon* v. *Gerry,* 13 Gray, 201, 202, 203 (part of which has been quoted above), and a more particular statement by Wells, J., in *Dennehey* v. *Woodsum,* 100 Mass. 195, 197, in accord with the great weight of authority set forth above. On the other hand the decision of this court in *Parker* v. *Huntington,* 7 Gray, 36, is to the contrary if that is to be taken to be a decision to that effect.

In *Cloon* v. *Gerry,* 13 Gray, 201, 202, Chief Justice Shaw speaking for this court said: "The question of reasonable and probable cause, when the facts are not contested, is a question of law. And when the plaintiff had been convicted by a tribunal, constituted by law, with authority to render a judgment, which, if not appealed from, would have been conclusive of his guilt, and such judgment is not impeached on the ground of fraud, conspiracy or subornation in its procurement, although afterwards reversed on another trial, it constitutes sufficient proof that the prosecution was not groundless, and defeats an action for malicious prosecution. The case of *Whitney* v. *Peckham,* 15 Mass. 243, is directly in point, and we think it is well sustained by authorities." In *Dennehey* v. *Woodsum,* 100 Mass. 195, 197, Wells, J., said: "The plaintiff seeks to take this case out of the general rule, on the ground that the conviction before the trial justice was obtained by the false testimony of the defendant himself, in pursuance of his original malicious purpose. If the conviction had been obtained solely upon the defendant's own false testimony, there would be strong reason for holding that it afforded no evidence of probable cause; and then the ultimate acquittal might warrant the maintenance of the action. But we do not think that the declaration sufficiently shows that the conviction before the trial justice was obtained solely upon the false testimony of the defendant." While these are statements only and not decisions they are more than mere *obiter dicta.* They are careful statements of the limitation of the rule first established by *Whitney* v. *Peckham* which was applied in both those cases.

*Parker* v. *Huntington,* 7 Gray, 36, was a case in which the plaintiff brought an action for malicious prosecution against the district attorney of Middlesex County in that he had caused the plaintiff to be indicted for perjury. It appeared that at the first trial for perjury the plaintiff was convicted but that he had

been subsequently acquitted. He thereupon brought the action for malicious prosecution which was before this court in 7 Gray, 36. The opinion in *Parker* v. *Huntington*, 7 Gray, 36, was in these words: "There is nothing in this case, as it now stands before us, which has not heretofore been decided against the plaintiff, in *Parker* v. *Farley*, 10 Cush. 279, and *Parker* v. *Huntington*, 2 Gray, 124, or, at least, intimated in the latter case to be insufficient to maintain his action. What we then intimated, we now adjudge. This case furnishes no exception to the rule, that a conviction of a party, by a jury, is conclusive evidence of probable cause for the prosecution. See also *Phelps* v. *Stearns*, 4 Gray, 105, that an injury caused by perjury is not a legal ground of action." The case of *Parker* v. *Huntington*, 2 Gray, 124, was before this court upon a demurrer to the declaration in an action for malicious prosecution against both the district attorney and the man (Farley by name) whose false testimony caused the plaintiff (Parker) to be convicted for the perjury of which he was acquitted in the end. In the case in 2 Gray, 124, the demurrer was special and for that reason this court did not then decide whether the declaration in that case set forth a cause of action, but they intimated that it did not. They intimated that it did not although it was alleged in that declaration that there was a conspiracy between the district attorney and Farley to have Parker indicted on the testimony of Farley which was known by both of them to be false. Under the statement of Chief Justice Shaw in *Cloon* v. *Gerry*, *ubi supra*, the declaration in 2 Gray, 124, did set forth a cause of action. If the court in 7 Gray, 36, decided what was intimated by the court in 2 Gray, 124, we have a decision which is in conflict with the statement of Chief Justice Shaw in *Cloon* v. *Gerry*. But that does not seem to have been the view which this court subsequently took of the decision in 7 Gray, 36. In *Dennehey* v. *Woodsum*, *ubi supra*, Wells, J., immediately before the part of his opinion quoted above, said: "In the first count it is alleged that the plaintiff was convicted of the criminal charge before the trial justice, but, upon appeal to the Superior Court, was there acquitted. This does not show want of probable cause. On the contrary, it is ordinarily held to be conclusive evidence of probable cause, and to defeat the action. *Whitney* v. *Peckham*, 15 Mass. 243. This is so, even when the first conviction is obtained by

false testimony. *Parker* v. *Huntington,* 7 Gray, 36." This means construed in the light of what follows: "This is so when the first conviction is obtained by the false testimony of persons other than the defendant in the subsequent action." If this is the extent of the decision in *Parker* v. *Huntington,* 7 Gray, 36, it is not in conflict with the opinions in *Cloon* v. *Gerry* and *Dennehey* v. *Woodsum, ubi supra.* It seems to be pretty plain that this must be taken to be the extent of that decision. The opinion in *Cloon* v. *Gerry* was rendered within three years after the decision in *Parker* v. *Huntington,* 7 Gray, 36. Chief Justice Shaw must have had it in mind when he delivered his opinion in *Cloon* v. *Gerry.* It is hardly conceivable.that he would not have referred to it in that opinion if he had thought it inconsistent with the law there laid down.

There is one possible difference between the decision in *Parker* v. *Huntington* and the rule laid down in *Cloon* v. *Gerry,* namely: In *Parker* v. *Huntington* there does not seem to have been any affirmative evidence of fraud or conspiracy not before the tribunal which made the first conviction which was reversed on appeal, while it seems to be assumed in *Cloon* v. *Gerry* that, to take a case out of the rule in *Whitney* v. *Peckham,* there must be evidence *aliunde* of fraud or conspiracy. It is hard to believe that it was upon this ground that *Parker* v. *Huntington* was decided. For in deciding *Parker* v. *Huntington* the court said: "There is nothing in this case, as it now stands before us, which has not heretofore been decided against the plaintiff, in *Parker* v. *Farley,* 10 Cush. 279, and *Parker* v. *Huntington,* 2 Gray, 124, or, at least, intimated in the latter case to be insufficient to maintain his action. What we then intimated, we now adjudge." In *Parker* v. *Huntington,* 2 Gray, 124, it was in terms alleged that the whole proceeding was had pursuant to a conspiracy between Farley and the district attorney and both of them knew that Parker did not commit perjury.

If it is necessary to choose between the decision in *Parker* v. *Huntington,* 7 Gray, 36, and the statement by Chief Justice Shaw in *Cloon* v. *Gerry* we are of opinion that the rule stated by the Chief Justice (the rule which is right as matter of principle and the one supported by the great weight of authority) ought to prevail.

If the plaintiff in the case at bar had made one offer of proof and that had been an offer to prove what (as stated in the bill of ex-

ceptions) appears to have been covered by the two offers of proof, he would have offered evidence that the whole scheme of the defendants, including the conviction in the district court, was a case of fraud and conspiracy from the beginning. If the evidence offered had been made in one offer of proof that offer taken with the evidence in the case would have made out this case, namely: The plaintiff lent the defendants $1,000; he was pressing them for payment; to get rid of the debt without paying it the defendants conspired together to accuse him of stealing from their cash drawer an amount equal to the sum lent; in pursuance of this conspiracy they threatened him with criminal proceedings if he did not pay them that sum; he refused; upon his refusal the father made the complaint and the plaintiff was convicted; the defendants claim (as shown in the subsequent civil action) was that he (the plaintiff) stole the money between April 9, 1908, and June 9, 1909, that they knew it throughout all the time but "made no efforts to discover the thief" until the plaintiff was pressing them for payment of the $1,000 borrowed of him by them and that the plaintiff had the opportunity to steal the money because he was in their store during that period every day from ten in the morning until noon or afternoon, while for twelve months of that period (lacking fifty days only) he was in fact at work on the bridges between Cambridge and Boston from eight in the morning until five in the afternoon as shown by the time books and the testimony of the bridge commissioner and his employees. This would have justified a finding of fraud and conspiracy on the part of the present defendants to accuse the plaintiff falsely and is founded on evidence (in large part at least) which could not have been before the magistrate who convicted the plaintiff if that is a material fact.

If the bill of exceptions is to be construed with great strictness the plaintiff made two offers of proof covering these facts in place of making one offer of proof as he should have done. It could be held that each offer of proof taken separately was rightly refused. That is to say it could be held that the plaintiff first offered to prove that the defendants in the civil action testified that he was in their store practically every day from ten in the morning until noon or afternoon during the period of a year and two months during which they missed money from their cash drawer and that this taken alone was rightly excluded; then that

he made a separate offer of proof, namely, that during one year of this period·of a year and two months (covered by the testimony of the defendants) he was working on the bridges from eight in the morning until five in the afternoon and that this could be proved by the testimony of the bridge commissioner and of various employees and "by their time books and records," and that this offer taken alone was rightly refused. But it is inconceivable that the two offers of proof were not intended to be taken together. And we are of opinion that the bill of exceptions ought not to be construed so strictly as to deprive the plaintiff of the benefit of the offer of proof which it is apparent he intended to make. So construed the offer of proof brings this case within the proposition established on principle by the great weight of authority outside of this Commonwealth and by the opinion of Chief Justice Shaw in *Cloon* v. *Gerry, ubi supra,* and that is a proposition which in our opinion is correct. It follows that the exception to the exclusion of the offer of proof must be sustained.

As the case must come up for a new trial we ought to consider the further proposition which is laid down by Mr. Justice Wells in *Dennehey* v. *Woodsum,* 100 Mass. 195. In *Dennehey* v. *Woodsum* Mr. Justice Wells said: "The plaintiff seeks to take this case out of the general rule, [established by *Whitney* v. *Peckham*] on the ground that the conviction before the trial justice was obtained by the false testimony of the defendant himself, in pursuance of his original malicious purpose. If the conviction had been obtained solely upon the defendant's own false testimony, there would be strong reason for holding that it afforded no evidence of probable cause; and then the ultimate acquittal might warrant the maintenance of the action. But we do not think that the declaration sufficiently shows that the conviction before the trial justice was obtained solely upon the false testimony of the defendant." There is a similar statement in *Witham* v. *Gowen,* 14 Maine, 362, 363. More than that the statement of Chief Justice Shaw in *Cloon* v. *Gerry* goes far to support the proposition put forward by Wells, J., in *Dennehey* v. *Woodsum.* The statement of Chief Justice Shaw is that if conviction by the inferior magistrate "is not impeached on the ground of fraud, conspiracy or subornation in its procurement" it is conclusive on the issue of probable cause. Chief Justice Shaw did not restrict his statement to a case where conviction by

the inferior magistrate was procured by fraud or conspiracy, but he included the case where conviction by the inferior magistrate was procured by "subornation in its procurement."

On principle it would seem that where a defendant has not acted upon a story which has been brought to him by another but has testified to facts which he swore were within his personal knowledge and to such facts alone and he in fact swore falsely and the conviction by the inferior magistrate was obtained solely by such false testimony, he (the defendant in such a case) ought not to be allowed to invoke as conclusive in his favor upon the issue of probable cause the conviction so procured by the inferior magistrate. That is to say the opinions in *Dennehey* v. *Woodsum* and *Witham* v. *Gowen* are correct. The foundation of the rule in *Whitney* v. *Peckham* would seem to be that the defendant (in the subsequent action for malicious prosecution) in making the charge acted on the same evidence on which the inferior magistrate convicted the plaintiff (in the subsequent action) of guilt; and it is for that reason that the conviction below although reversed on appeal establishes the fact that the defendant had probable cause to believe the plaintiff (in the subsequent action) to be guilty. In such a case the fact that in telling the story which he told to the defendant and to the inferior magistrate the third person committed perjury is not material. But where the defendant (in the subsequent action) does not act on a story told to him by another but concocts a false story of what he saw and persuades the magistrate that what he falsely swore to was true there is no reason why the ordinary rule should not apply, namely, that, the criminal proceedings having ultimately come to an end in favor of the plaintiff, he is entitled to compensation if it be found in the action for malicious prosecution that the defendant acted *mala fide* and without probable cause.

We are of opinion that the statement of Wells, J., in *Dennehey* v. *Woodsum* is law. Under that rule the plaintiff's exception to the order directing a verdict for the defendant in the case at bar was wrong for it is stated in the bill of exceptions "that no testimony as to his' [the plaintiff's] committing the larceny charged was offered by the prosecution in the district court except that of the two Fawcetts."

The result is that at the new trial which must take place the

plaintiff can attack the conviction by the inferior magistrate on both grounds, namely, on the ground stated by Chief Justice Shaw in *Cloon* v. *Gerry* and on that stated by Wells, J., in *Dennehey* v. *Woodsum*. The entry must be

Exceptions sustained.